UNITED STATES EXP. Co. *v.* ALLEN, Comptroller, *et al.*

(*Circuit Court, E. D. Tennessee.* September 21, 1889.)

1. FEDERAL COURTS—JURISDICTION—TAXATION.
   The federal courts have jurisdiction of suits involving the validity of a tax imposed by a state, alleged to be in violation of the United States constitution, without regard to the citizenship of the parties thereto.
2. SAME—UNCONSTITUTIONAL TAX—REMEDY.
   The law of Tennessee providing that, in case of taxes alleged to be illegal, the remedy shall be to pay such taxes under protest, and then bring suit therefor, does not apply where the tax is alleged to be unconstitutional, as such a tax is void.
3. SAME.
   Under act Cong. March 3, 1887, providing that no civil suit shall be brought in either the district or circuit court against any person by any original process in any other district than that whereof he is an inhabitant, except when jurisdiction is founded only on the fact that the action is between citizens of

different states, a suit to enjoin collection of a tax, on the ground that it violates the United States constitution, must be dismissed as to such defendants as are non-residents of the district in which it is brought.

4. CONSTITUTIONAL LAW—TAXATION—INTERSTATE COMMERCE.

Act Tenn. March 29, 1887, imposing a license tax upon express companies, is unconstitutional, as invading the exclusive power of congress to regulate interstate commerce, as against an express company engaged in interstate transportation.

5. SAME.

Act Tenn. April 8, 1889, providing that such tax shall be paid for transporting one or more packages between points within the state, the amount of such tax being regulated by the length of the company's lines, is, in effect, a tax on interstate business, and is unconstitutional.

In Equity. On bill for injunction.

*Tracy, McFarland, Platt & Boardman, John M. Bright, R. L. Bright,* and *Russell & Daniels,* for complainant.

*W. G. M. Thomas* and *Joel Fort,* for defendants.

KEY, J. The bill is filed in this case to enjoin the collection of a tax imposed upon complainant by the state, by the acts of 1887 and 1889, upon the ground that the tax is in violation of the constitution of the United States. At the threshold we are met with a motion by defendants to dismiss the suit for various reasons. It is insisted that there is not such diverse citizenship as to give this court jurisdiction. Diverse citizenship is one ground of jurisdiction in a federal court, but not the sole ground, by any means. Controversies as to the constitution and laws of the United States are of federal judicial cognizance as well, and the question in this case arises out of this branch of the court's jurisdiction, to which defendants' motion does not apply.

Another reason for the motion to dismiss is because the state of Tennessee has, by law, provided that the remedy in such cases as the one under consideration is to pay the taxes assessed under protest, and then bring suit to recover the same. This act of the legislature is constitutional unquestionably, but the case of *Poindexter* v. *Greenhow,* 114 U. S. 270, 5 Sup. Ct. Rep. 903, is decisive of the point made. Virginia had a law of like provisions with the Tennessee law, and objection was made that the money had not been paid and suit brought therefor. But the court held substantially that as Virginia had enacted a law making certain coupons receivable for taxes, and as these coupons had been tendered and refused, the provisions of the federal constitution against legislation impairing the obligations of contracts had been violated, and no payment of the tax could be required as a condition of bringing suit. An unconstitutional tax is a void tax, and no right or duty can inhere in or depend upon it. There was no prepayment of the tax, and suit thereafter in the Virginia case. It is true coupons had been tendered, but this was done not as compliance with the Virginia statute, or under its provisions, but it was done so that the tax-payer might comply with the terms of his contract with the state, and if the state refused to stand by its bargain, that he might find protection under the federal constitution. If, in the case in hand, the tax is unconstitutional, it is void. It confers

no right, imposes no duty, supports no obligation. Nothing can be predicated upon it.

The only other branch of defendant's motion that it is necessary to consider is that the suit should be dismissed as to defendant Allen, because the face of the bill shows that he is not a resident of this district. As to this the motion must be sustained. The act of congress, approved August 13, 1888, correcting the enrollment of the act of March 3, 1887, provides in section 1:

"No civil suit shall be brought before either of said courts [the district or circuit] against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or defendant." 25 St. at Large, 434.

This suit is not founded on diverse citizenship, and does not fall under the last category of the clause quoted, but it does fall under the first, and the language is positive and peremptory. This leaves the case here as to the sheriff and his deputy, to whom the process for the collection of the tax came, and by whom it was levied, and whom it sought to enjoin.

The bill seeks to enjoin the collection of two taxes, or a tax imposed in two years, each for $3,000. The legislature of Tennessee, by an act approved March 29, 1887, provided that the following taxes should be paid by express companies:

"In lieu of all other taxes, except *ad valorem* tax, if the lines are less than 100 miles long, per annum .$1,000. If the lines are over 100 miles long, per annum $3,000."

The same authority, by an act approved April 8, 1889, provided that express companies should pay a tax, "in lieu of all other taxes except *ad valorem* tax, if the lines are less than 100 miles long, for one or more packages taken up at one point in this state and transported to another point in this state, per annum $1,000. If the lines are more than 100 miles long, for one or more packages taken up at one point in this state and transported to another point in this state, per annum $3,000." By this act it is made a misdemeanor, punishable by a fine and imprisonment, to conduct the express business without prepayment of the tax. In a case entitled *Com.* v. *Express Co.*, under an act of Kentucky similar in its provisions to the Tennessee law of 1887, the Louisville law and equity court, in an ably written opinion, held the act void because the tax was an infraction of the provision of the federal constitution in regard to interstate commerce. And the circuit court of the United States for the southern district of Mississippi, in *Express Co.* v. *Hemmingway, ante,* 60, takes a similar view in regard to a Mississippi statute of like import. The cases decided by the supreme court of the United States which favor or support a different view of this tax are *Osborne* v. *Mobile,* 16 Wall. 479, and *Wiggins Ferry Co.* v. *St. Louis,* 107 U. S. 365, 2 Sup. Ct. Rep. 257. But in *Leloup* v. *Mobile,* 127 U. S. 640, 8 Sup. Ct. Rep. 1380, the supreme court overrules, substantially at least, these decisions. It says: "In view of the course of decisions which have been

made since that time, (1872,) it is very certain that such an ordinance would now be regarded as repugnant to the power conferred upon congress to regulate commerce among the several states." *Leloup* v. *Mobile*, *supra*, 647. This, though said of the *Osborne Case*, must in principle apply with equal force to the *Wiggins Ferry Case*. It seems to me that, under the line of decisions of our supreme court, the tax imposed upon the complainant by or under the act of 1887 was void, as repugnant to the constitutional authority given congress to regulate commerce between the states. It is, in no sense, a property or *ad valorem* tax. It is essentially a license, or privilege tax. There is no description of or limitation of the business. It makes no difference whether it be interstate or intrastate. If it be an express company, it is taxed. If it be a hundred miles long it must pay $1,000. If more, it must pay $3,000. Complainant is an instrumentality of interstate transportation. It does business through and between states, as well as within them, and cannot be so taxed.

The act of 1889, however, attempts to avoid the difficulty in which the act of 1887 is involved. It provides that the company may be taxed when it carries one or more packages from one point in the state to another point in the state. This is meant to be considered as a tax for the privilege of doing business within the state, and to escape being regarded as a tax on business between states. The tax may be avoided should no packages be borne from one point to another in this state. This tax, carried to its logical results, bears as hardly on the company as the other. If it confine its operations to an interstate business, it must still have its agents and offices at the various stations on its lines to receive and deliver its packages, so that the interstate business would be burdened with charges which otherwise would be divided between the two classes of business. The fact that the interstate business may be thus burdened does not necessarily invalidate the tax, perhaps. But is not this provision of the statute a mere device to fasten the tax upon the company? It is no exercise of the police power of the state. If the tax be paid, it makes not the slightest difference whether the packages taken up and carried and delivered between and at points in the state be one or a million. It is not a tax regulated by the amount of business. It is as much if one package be carried as if ten millions go. A package of a dime in value, carried five miles, may involve a license fee of $1,000 or $3,000, depending altogether on the length of the line of transportation used by the company. The length of the line used is the measure of the tax. This cannot be the standard. *Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. Rep. 1118. The supreme court says in *Leloup* v. *Mobile*, 127 U. S. 645, 8 Sup. Ct. Rep. 1380:

"Ordinary occupations are taxed in various ways, and, in most cases, legitimately taxed, but we fail to see how a state can tax a business occupation when it cannot tax the business itself. Of course, the exaction of a license tax as a condition of doing any particular business is a tax on the occupation; and the tax on the occupation of doing a business is surely a tax on the business."

And again at 648, in the same case, the court says:

"In our opinion such a construction of the constitution leads to the conclusion that no state has the right to lay a tax on interstate commerce in any form whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to congress."

So, under the tax law of the state of 1889, although the tax purports on its face to be for carrying on the express business within the state, yet, as already shown, the burden of the tax falls upon the interstate business, and amounts to a collection of the tax from that source to a great extent at least.

It follows from the views announced that an injunction may issue as prayed for, on complainant executing bond, with sufficient surety in the penalty of $10,000, to satisfy such decree as may be finally rendered against it in the cause.